IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| JESSICA HEATH, individually and on behalf of all others similarly situated, | Civil Action No. |
| Plaintiff, | COLLECTIVE ACTION COMPLAINT |
| v. | JURY TRIAL DEMANDED |
| HCA HEALTHCARE, INC., VALESCO HOLDINGS, LLC f/k/a HCA-EMCARE HOLDINGS, LLC, FL-I MEDICAL SERVICES, LLC, and EMERGENCY MEDICINE SERVICES OF FL, LLC, | |
| Defendants. | |

## COLLECTIVE ACTION COMPLAINT

Plaintiff Jessica Heath ("Plaintiff"), through her undersigned counsel, individually, and on behalf of all other similarly situated persons, files this Collective Action Complaint ("Complaint") against Defendants HCA Healthcare, Inc., Valesco Holdings, LLC f/k/a HCA-EmCare Holdings, LLC, FL-I Medical Services, LLC, and Emergency Medicine Services of FL, LLC (collectively, "Defendants") seeking all available remedies under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.* for failure to pay all wages owed. The following allegations are based on personal knowledge as to Plaintiff's own conduct and are made on information and belief as to the acts of others.

## JURISDICTION AND VENUE

1. This Court has federal question jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 and Section 16(b) of the FLSA, 29 U.S.C. § 216(b).

2. Venue in this Court is proper pursuant to 28 U.S.C. § 1391. Defendants conduct business in this district.

## PARTIES

1.      Plaintiff Jessica Heath is a resident of Fort Lauderdale, Florida. Plaintiff has been employed by Defendants as a Nurse Practitioner in Florida since approximately November 2022. Pursuant to 29 U.S.C. § 216(b), Plaintiff Heath has consented in writing to be a Plaintiff in this action. *See* Ex. A.

2.      Defendant HCA Healthcare, Inc. ("HCA Healthcare") is a registered Delaware corporation with its principal place of business at One Park Plaza, Nashville, TN 37203.

3.      Defendant Valesco Holdings, LLC f/k/a HCA-EmCare Holdings, LLC ("Valesco") is a registered Delaware limited liability corporation with its principal place of business at One Park Plaza, Nashville, TN 37203. Valesco Holdings, LLC was formed on April 20, 2011 under the laws of the State of Delaware as the corporate vehicle for a 50/50 joint venture between HCA Healthcare, Inc. and physician practice management firm EmCare, Inc., which was subsequently acquired by Envision Healthcare Corporation ("Envision").[1] The entity operated under the name HCA-EmCare Holdings, LLC until June 3, 2024, when it filed a Certificate of Amendment of Certificate of Formation with the Delaware Secretary of State changing its name to Valesco Holdings, LLC.[2]

4.      Defendant FL-I Medical Services, LLC ("FL-I Medical") is a registered Florida limited liability corporation with its principal place of business at 20 Burton Hills Boulevard, Suite 500, Nashville, TN 37215.[3] Valesco is the direct parent and sole member of Defendant FL-I

---

[1] Valesco Holdings, LLC, Del. Div. of Corps., File No. 4971464 (formed Apr. 20, 2011), https://icis.corp.delaware.gov. *See also* Tara Bannow, *HCA Healthcare CFO: Envision Healthcare's Bankruptcy Won't Disrupt Valesco, Its Recently Optioned Staffing JV*, Fierce Healthcare (May 17, 2023), https://www.fiercehealthcare.com/providers/hca-healthcare-cfo-envision-healthcares-bankruptcy-wont-disrupt-valesco-its-recently.
[2] State of Delaware, Certificate of Amendment of Certificate of Formation for HCA-EmCare Holdings, LLC (filed June 3, 2024), SR 20242749180, File No. 4971464.
[3] Fla. Div. of Corps., Detail by Entity Name: FL-I Medical Services, LLC (last visited May 7,

Medical.

5.     Defendant Emergency Medicine Services of FL, LLC ("Emergency Medicine Services") is a registered Delaware limited liability corporation with its principal place of business at One Park Plaza, Nashville, TN 37203. Emergency Medicine Services is a direct subsidiary of HCA Healthcare.

6.     The unlawful acts alleged in this Complaint were committed by Defendants and/or Defendants' officers, agents, employees, or representatives, while actively engaged in the management of Defendants' businesses or affairs and with the authorization of Defendants.

7.     Defendants employ Plaintiff and similarly situated employees as defined by the FLSA, 29 U.S.C. § 203(d). *See also* 29 C.F.R. 791.2(a).

8.     During all times relevant, Plaintiff has been an employee of Defendants and is covered by the FLSA and state law.

9.     During all times relevant, Defendants are employers and/or enterprises covered by the FLSA and state law.

10.     At all times material to this action, Defendants have been engaged in commerce or in the production of goods for commerce as defined by the FLSA.

11.     Defendants' annual gross sales exceed $500,000.

### COLLECTIVE DEFINITION

12.     Plaintiff brings Count I of this lawsuit pursuant to the FLSA, 29 U.S.C. § 216(b), as a collective action on behalf of herself and the following proposed collective:

> All current and former employees who performed advanced patient care duties, including but not limited to Registered Nurses, Nurses, Advanced Practice

---

2026), https://search.sunbiz.org. *See also* HCA Healthcare, Inc., Annual Report (Form 10-K) exhibit 21, *List of Subsidiaries* (Feb. 14, 2025), https://www.sec.gov/Archives/edgar/data/0000860730/000095017025020134/hca-ex21.htm.

Providers, and those in similarly titled positions, who were paid on an hourly basis, and who worked more than forty (40) hours in a workweek in the past three years ("FLSA Collective").

13.     Plaintiff reserves the right to redefine the Collective prior to notice or certification, and thereafter, as may be warranted or necessary.

## FACTUAL BACKGROUND

### *Defendants are Joint Employers*

14.     At all relevant times, Defendants were Plaintiff's joint employers within the meaning of the Fair Labor Standards Act and applicable regulations. 29 U.S.C. § 203(d); 29 C.F.R. § 791.2.

15.     Defendant Valesco was formed on April 26, 2011 as the corporate vehicle for a 50/50 joint venture between HCA Healthcare, Inc. and EmCare, Inc., a physician practice management firm. EmCare, Inc. was subsequently acquired by Envision, which thereby became an indirect owner of Valesco and, through Valesco, of Defendant FL-I Medical. At all relevant times prior to April 2023, HCA Healthcare held a 50% ownership interest in Valesco alongside Envision's 50% interest, and through that interest exercised ownership and operational control, directly or indirectly, over Defendant FL-I Medical.[4]

16.     In April 2023, HCA Healthcare increased its ownership interest in Valesco from 50% to 90%, acquiring a controlling majority stake.[5] HCA Healthcare completed its full

---

[4] Bannow, *supra* note 1. *See also* Tara Bannow, *HCA Healthcare Reports $1.1B Net Income, Rising Volumes in Q3 2023*, Fierce Healthcare (Oct. 27, 2023), https://www.fiercehealthcare.com/providers/hca-healthcare-reports-11b-net-income-rising-volumes-q3-2023. *See also Report: HCA, PE Giant Eyeing Envision*, Nashville Post (Apr. 19, 2021), https://www.nashvillepost.com/report-hca-pe-giant-eyeing-envision/article_5635be68-953e-5dcb-93df-8a21feba8d5a.html.

[5] Alan Condon, *HCA Joint Venture to Lose $50M a Quarter*, Becker's Hosp. Rev. (Oct. 24, 2023), https://www.beckershospitalreview.com/finance/hcas-physician-staffing-jv-to-lose-50m-a-quarter/. *See also* Bannow, *supra* note 1.

4

acquisition of EmCare Holdings, Inc. from Envision (and with it their affiliated operating entities including FL-I Medical), in or about June 2024, with the transaction publicly reported as finalized on August 28–29, 2024. Concurrently, on June 3, 2024, HCA-EmCare Holdings, LLC filed a Certificate of Amendment with the Delaware Secretary of State formally changing its name to Valesco Holdings, LLC.[6] Following the acquisition, Valesco and FL-I Medical continued substantially the same business operations, staffing, management, policies, and revenue-generating activities.

17.     Defendant HCA Healthcare directly or indirectly owns, controls, holds equity interests in, or exercises dominion over Defendant Valesco, and through Valesco, directly or indirectly owns and controls Defendant FL-I Medical, either wholly or as a controlling majority interest.

18.     Defendant Valesco functions and at all relevant times functioned as a parent company, holding company, or managing subsidiary for FL-I Medical, possessing ownership interests and contractual rights sufficient to dictate FL-I Medical's policies, practices, finances, staffing, billing, and day-to-day operations.

19.     Together, Defendants jointly exercised significant control over the terms and conditions of Plaintiff's employment, including but not limited to hiring, credentialing, assignment, supervision, scheduling, compensation, evaluation, discipline, termination, and workplace policies.

---

[6] Elizabeth Gregerson, *HCA Completes Acquisition of Envision Joint Venture*, Becker's Hosp. Rev. (Aug. 28, 2024), https://www.beckershospitalreview.com/hospital-transactions-and-valuation/hca-completes-acquisition-of-envision-joint-venture/. *See also* S&P Capital IQ, *HCA Healthcare, Inc. Acquired EmCare Holdings Inc. from Envision Healthcare Corporation*, MarketScreener (Aug. 29, 2024), https://www.marketscreener.com/quote/stock/HCA-HEALTHCARE-INC-7534808/news/HCA-Healthcare-Inc-acquired-Emcare-Holdings-Inc-from-Envision-Healthcare-Corporation-47772789/.

20. FL-I Medical acted as the direct employer of Plaintiff.

21. Valesco exercised direct and operational control over Plaintiff's employment by establishing and enforcing policies governing physician and staff scheduling, staffing levels, productivity requirements, compensation methodologies, billing practices, compliance obligations, supervision standards, and performance metrics applicable to Plaintiff.

22. Prior to April 2023, Envision exercised joint employer authority over Plaintiff by directing enterprise-wide employment policies, financial incentives, staffing models, and revenue expectations that governed Plaintiff's work and working conditions through its 50% ownership interest in Valesco and through Valesco's operating subsidiary, FL-I Medical.

23. Beginning in April 2023, when HCA Healthcare increased its ownership of Valesco from 50% to 90%, and continuing through HCA Healthcare's full acquisition of Valesco and its affiliated entities, including FL-I Medical, effective June 2024, Defendant HCA Healthcare assumed and exercised sole joint employer authority over Plaintiff by continuing the same centralized employment policies, staffing structures, compensation frameworks, compliance requirements, and reporting hierarchies previously imposed by Envision, without material interruption or change to Plaintiff's duties, supervision, or working conditions.

24. FL-I Medical was the direct employer of Plaintiff from approximately November 2022 through on or about June 1, 2024, pursuant to a written Employment Agreement and subsequent amendments executed between FL-I Medical and Plaintiff. Following HCA Healthcare's full acquisition of Valesco and its affiliated entities, Plaintiff's employment was assigned to and assumed by Emergency Medicine Services of FL, LLC, another HCA Healthcare affiliate, as expressly confirmed in the January 6, 2026 offer letter issued on HCA Healthcare letterhead, which stated that the offer "terminates and replaces any previous agreements between

6

the APP and Company (including agreements assigned to and assumed by Company as of June 1, 2024) for same or substantially similar services."

25.     Defendants also shared senior management and executive leadership across the entities, including executives who simultaneously held authority over FL-I Medical and its parent entities and who were responsible for enterprise-wide staffing, operational integration, and employment practices.

26.     Indeed, Florida Division of Corporations records identify Dr. Brian D. Baxter, M.D., FACEP as the COO of Defendant FL-I Medical, at the same address of 20 Burton Hills Blvd., Suite 500, Nashville, TN 37215, as FL-I Medical's sole authorized Member, HCA-EmCare Holdings, LLC. Dr. Baxter signed Plaintiff's First Amendment to Employment Agreement on January 30, 2023 on behalf of FL-I Medical.

27.     Upon information and belief, Dr. Baxter's executive roles across all three Defendants track precisely the corporate ownership chain connecting FL-I Medical, Valesco, and HCA Healthcare. From approximately March 2012 through April 2017, Dr. Baxter served as Senior Vice President of EmCare, Inc., the physician practice management firm that formed the 50/50 joint venture with HCA Healthcare that became Valesco Holdings, LLC. From April 2017 through September 2019, he served as Executive Vice President of Envision Healthcare, EmCare's ultimate parent. From September 2019 through May 2024, he served as President of the Alliance National Group at Envision Physician Services, the internal division specifically responsible for managing the HCA joint venture relationship. Dr. Baxter's simultaneous service as COO of FL-I Medical and senior executive of its parent entities establishes that a single executive held operational authority over both the direct employer and its controlling entities at the same time.

7

28.     Effective June 2024, concurrent with HCA Healthcare's full acquisition of Valesco and its affiliated entities, Dr. Baxter transitioned directly to Group Vice President at HCA Healthcare, Inc., a position he held through August 2025, further evidencing the continuity of management and operational control across all three Defendants without interruption.

29.     Dr. Baxter's own LinkedIn profile describes his HCA role as having "spearheaded enterprise integration post-Envision acquisition, ensuring seamless leadership transition and service continuity" across 310 emergency medicine, hospital medicine, and critical care contracts representing $1.1 billion in annual revenue. This public statement by the executive who served as COO of Defendant FL-I Medical and who signed Plaintiff's employment agreement confirms not that HCA Healthcare created unified control through the acquisition, but rather that such unified operational and management control had existed continuously since the formation of the 50/50 joint venture between HCA Healthcare and EmCare in 2011. HCA Healthcare's incremental acquisition of Valesco, from 50% ownership in 2011, to 90% ownership in April 2023, to full ownership in June 2024, did not create a new employment relationship or a new management structure, but rather formalized and made explicit the operational control that HCA Healthcare had exercised jointly with EmCare and Envision over Defendant FL-I Medical, and over the compensation, scheduling, staffing, and employment terms governing Plaintiff and similarly situated employees, throughout the entirety of the relevant period.

30.     Upon information and belief, Defendants jointly exercised control, directly or indirectly, over Plaintiff's work schedule, shift assignments, staffing coverage, clinical placement, and workload.

31.     Upon information and belief, Defendants jointly determined Plaintiff's compensation, including pay rates, bonuses and incentives, and maintained centralized payroll, billing, and compensation oversight functions.

32.     Defendants' joint-employer status is confirmed by written employment agreements and offer letters establishing that Defendants jointly controlled Plaintiff's work location, scheduling, compensation, benefits, reimbursement policies, and continued employment. Plaintiff provided services exclusively at HCA Healthcare facilities; compensation and incentives were set based on HCA-designated facilities; schedules were established pursuant to centralized company policy; benefits, travel, and CME reimbursement were governed by HCA Healthcare and Clinical Services Group policies; and employment agreements were assigned, assumed, and replaced as ownership transferred from Envision to HCA Healthcare, without interruption to Plaintiff's duties or supervision.

### *Defendants Misclassified Plaintiff and Collective Members as Exempt*

33.     Defendants misclassified Plaintiff and similarly situated nurses as exempt professional employees despite compensating them exclusively on an hourly basis. Although Defendants labeled Plaintiff's compensation as including a "salary," Plaintiff was never paid a guaranteed weekly amount and was instead compensated based solely on hours worked, with earnings fluctuating from pay period to pay period. As a result, Plaintiff and the FLSA Collective did not satisfy the salary-basis requirement for exemption under the FLSA and were entitled to overtime compensation for all hours worked in excess of forty (40) in a workweek.

34.     Plaintiff is a licensed Family Nurse Practitioner ("FNP") who provided direct patient care in the emergency department at Westside Regional Hospital in Plantation, Florida.

35. During the relevant period, Plaintiff and similarly situated nurses were employed as W-2 employees by Defendants and were assigned to work at HCA-affiliated facilities pursuant to standardized employment agreements.

36. In 2022, Plaintiff entered into an employment agreement with Defendant FL-I Medical. Under that agreement, Plaintiff was compensated pursuant to a base hourly rate, an hourly night-shift rate, and hourly rates for hours worked on designated holidays.

37. On January 30, 2023, Plaintiff executed an amendment to the 2022 agreement. Under the amended agreement, Plaintiff was nominally assigned an annual "base salary" of $75,600.00 effective February 1, 2023, together with additional compensation tied directly to hours worked. The agreement also provided for an hourly night-shift differential of $5.00 per hour and additional hourly compensation for hours worked on designated holidays.

38. Although Defendants' agreements characterized Plaintiff's compensation as including a "base salary," Defendants did not, in practice, pay Plaintiff on a salary basis within the meaning of the FLSA.

39. The professional exemption applicable to nurses and advanced practice providers applies only if an employee is paid on a salary or fee basis of at least $684 per week and satisfies the applicable duties test.

40. Payment on a "salary basis" requires that an employee regularly receive a fixed, predetermined amount each workweek that is guaranteed and not subject to reduction or variation based on the quantity of work performed or the number of hours worked.

41. At no time did Defendants pay Plaintiff and similarly situated nurses a fixed, predetermined weekly amount that was guaranteed regardless of hours worked. Instead, Plaintiff's

and similarly situated nurses' compensation routinely fluctuated from pay period to pay period based solely on the number of hours worked.

42. Plaintiff's and similarly situated nurses' pay increased or decreased depending on the number of hours worked during each pay period, rather than including a constant base payment each week that they performed work as required under the salary-basis test. Plaintiff and similarly situated nurses received no guaranteed weekly salary and were not paid a fixed amount immune from reduction or variation based on hours worked.

43. Defendants further compensated Plaintiff and similarly situated nurses with hourly shift differentials and other hourly-based premiums that were calculated and paid only for hours actually worked, confirming that Plaintiff and similarly situated nurses were compensated on an hourly, not salaried, basis.

44. Defendants also paid Plaintiff similarly situated nurses straight-time hourly wages for hours worked in excess of forty (40) in a workweek, rather than paying a predetermined salary intended to compensate for all hours worked.

45. During this period, Plaintiff and similarly situated nurses regularly worked more than forty (40) hours in a workweek, yet Defendants failed to pay overtime compensation at one and one-half times their regular rate of pay for hours worked over forty (40).

46. Effective June 1, 2024, and in connection with HCA Healthcare's full acquisition of Valesco and its affiliated entities, Plaintiff's employment was assigned to and assumed by Defendant Emergency Medicine Services of FL, LLC, a direct HCA Healthcare subsidiary listed in HCA Healthcare's 2024 10-K.[7] Defendant Emergency Medicine Services issues Plaintiff's pay statements.

---

[7] *See* HCA Healthcare, *supra* note 3. *See also* Andrew Cass, *Where HCA Sees Value in Valesco*,

47.     This assumption of employment agreements was expressly confirmed in a January 6, 2026 offer letter issued on HCA Healthcare letterhead by Simone Escalante, Director of Operations, East Florida Division, HCA Healthcare Hospital Based Services, which stated that the new offer of employment "terminates and replaces any previous agreements between the APP and Company (including agreements assigned to and assumed by Company as of June 1, 2024) for same or substantially similar services." Plaintiff accepted the January 6, 2026 offer on January 11, 2026, and continues to provide the same emergency medicine services at HCA-affiliated facilities without interruption.

48.     Following the transition, Plaintiff and similarly situated nurses remained W-2 employees, and their paychecks and wage statements identified HCA-affiliated emergency services entities as their employers. They continued to be paid pursuant to hourly rates, with wage statements reflecting defined numbers of hours worked and compensation derived from hourly multipliers.

49.     For example, Plaintiff's wage statement dated June 14, 2024, reflects that Plaintiff continued to be paid pursuant to hourly rates after the transition. The statement includes compensation for defined numbers of hours worked under line items such as "Productivity" and "12HrShft," with total earnings derived from the multiplication of hours worked by hourly rates. The pay period covered May 26, 2024 through June 8, 2024. During this period, Plaintiff worked and was paid for 24 hours at an hourly rate of $78.75 and received a $5.00 shift differential for 13 hours worked.

---

Becker's Hosp. Rev. (Oct. 28, 2024), https://www.beckershospitalreview.com/finance/where-hca-sees-value-in-valesco/.

50.     Plaintiff's wage statement dated June 28, 2024, covering the pay period from June 9, 2024 through June 22, 2024, reflects that Plaintiff worked and was paid for 101 hours. The wage statement shows that Defendants compensated Plaintiff for all 101 hours at her straight-time hourly rate of $78.75 and paid a $5.00 shift differential for 31 hours but failed to pay overtime compensation at one and one-half times Plaintiff's regular rate of pay for hours worked in excess of forty (40) in each affected workweek.

51.     Plaintiff's wage statement dated August 8, 2025, covering the pay period from July 20, 2025 through August 2, 2025, reflects that Plaintiff worked and was paid for 70 hours at an hourly rate of $78.75 and received a $5.00 shift differential for 9 hours worked.

52.     Plaintiff's wage statement dated December 26, 2025, covering the pay period from December 7, 2025 through December 12, 2025, reflects that Plaintiff worked and was paid for 75 hours at an hourly rate of $78.75 and received a $5.00 shift differential for 18 hours worked.

53.     In a correspondence from Defendants, sent in or around August 2025, Defendants admitted that Plaintiff and similarly situated nurses were not paid on a salary basis: stating that they would being "transiting APPs [Advanced Practicer Providers] to salaried employees to help streamline our payment and operational processes" and that "[i]nstead of being paid based on hours worked (hourly), with [APPs] paychecks amount potentially changing each pay period, [APPs] will be paid the same amount for standard productive time across 26 bi-weekly paychecks[.]" Notwithstanding their recognition that Plaintiff and similarly situated nurses had been paid on an hourly basis, and thus did not meet the salary basis requirement for the professional exemption, Defendants did not pay retroactive overtime compensation for all hours worked over forty (40) in a workweek.

54.     Ultimately, throughout the relevant time period, Defendants failed to pay Plaintiff and similarly situated nurses overtime compensation at one and one-half times their regular rate of pay for any hours worked in excess of forty (40) in a workweek. Plaintiff and similarly situated nurses did not satisfy the salary-basis requirement to be considered exempt employees because they were paid on an hourly basis, as confirmed by Defendants' payroll records and wage statements.

55.     Plaintiff's wage statements further reflect that Defendants paid Plaintiff additional forms of compensation, including night-shift differentials and other hourly-based incentives.

56.     When an employee is non-exempt, all remuneration for employment—including shift differentials and other hourly premiums—must be included in the regular rate of pay for purposes of calculating overtime, except for limited statutory exclusions not applicable here.

57.     Defendants failed to include Plaintiff's shift differentials and other hourly premiums in the calculation of her regular rate of pay and failed to apply an overtime premium to those amounts.

58.     As a result, Defendants underpaid Plaintiff's overtime compensation both by failing to pay time-and-one-half for hours worked over forty (40) and by failing to properly calculate the regular rate of pay.

59.     Defendants knew or showed reckless disregard for the fact that Plaintiff's and similarly situated nurses' compensation structure did not satisfy the salary-basis requirement and that they were entitled to overtime compensation under the FLSA. Defendants tracked hours worked, issued detailed wage statements, and paid Plaintiff and similarly situated nurses at straight-time hourly rates even while classifying them as "exempt."

## COLLECTIVE ACTION ALLEGATIONS

14

60.     Plaintiff brings this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of herself and the FLSA Collective as defined above.

61.     Plaintiff desires to pursue their FLSA claim on behalf of all individuals who opt in to this action pursuant to 29 U.S.C. § 216(b).

62.     Plaintiff and the FLSA Collective are "similarly situated" as that term is used in 29 U.S.C. § 216(b) because, *inter alia*, all such individuals currently work or have worked pursuant to Defendants' common business and payroll practices as described herein, and, as a result of such practices, have not been paid overtime compensation due as described herein. Resolution of this action requires inquiry into common facts, including, *inter alia*, Defendants' common compensation and payroll practices.

63.     These similarly situated employees are known to Defendants, readily identifiable, and can be easily located through Defendants' business records.

64.     Defendants employ and has employed many FLSA Collective members throughout the United States. These similarly situated current and former employees may be readily notified of this action through U.S. mail and/or other reasonable means, and allowed to opt in to this action, pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for unpaid wages, liquidated damages, interest, attorney's fees, and costs under the FLSA.

**COUNT I**
**Violation of the FLSA**
**<u>(On Behalf of Plaintiff and the FLSA Collective)</u>**

65.     All previous paragraphs are incorporated as though fully set forth herein.

66.     The FLSA requires that covered employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1½) times the regular rate at which he is employed. *See* 29 U.S.C. § 207(a)(1).

15

67. Defendants are subject to the wage requirements of the FLSA because Defendants is an "employer" under 29 U.S.C. § 203(d).

68. At all relevant times, each of Defendants was, and continues to be, an "employer" engaged in interstate commerce and/or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203.

69. During all relevant times, the members of FLSA Collective, including Plaintiff, were covered employees entitled to the above-described FLSA's protections. *See* 29 U.S.C. § 203(e).

70. Plaintiff and the FLSA Collective are not exempt from the requirements of the FLSA.

71. Defendants, pursuant to its policies and practices, failed and refused to pay overtime wages for all hours worked in excess of forty (40) in a workweek by Plaintiff and the Collective Members during the relevant time period.

72. Defendants knowingly failed to properly compensate Plaintiff and the Collective Members' overtime wages for hours worked in excess of forty (40) in a workweek, in violation of 29 U.S.C. § 207 and 29 C.F.R. § 552.100.

73. Plaintiff and the FLSA Collective are entitled to be paid overtime compensation for all hours worked over forty (40) in a workweek.

74. The FLSA defines the "regular rate" as including "all remuneration for employment paid to, or on behalf of, the employee[.]" 29 U.S.C. § 207(e).

75. The Supreme Court has held that the term "regular rate" "obviously means the hourly rate actually paid the employee for the normal, non-overtime workweek." *Bay Ridge v. Operating Co. v. Aaron,* 334 U.S. 446, 460 (1948) (quoting *Walling v. Helmerich & Payne,*

16

*Inc.,*323 U.S. 37, 40 (1944)).

76.     With a few limited exceptions, all remuneration given to an employee must be included in the employee's regular rate calculation. *See* 29 U.S.C. § 207(e); 29 C.F.R. § 778.108.

77.     Plaintiff and the FLSA Collective receive non-discretionary compensation in addition to their hourly rate of pay, including, *inter alia*, shift differentials and holiday incentive pay.

78.     The additional payments that Defendants provide are non-discretionary and should be included in Plaintiff and the FLSA Collective Members' regular rate.

79.     The additional payments are paid as part of Plaintiff's and the FLSA Collective's usual wages.

80.     The additional payments are promised to Plaintiff and the FLSA Collective in advance.

81.     The additional payment amounts are predetermined and based on fixed formulas with defined metrics, causing Plaintiff and the FLSA Collective to form a reasonable and definite expectation that they receive the additional payments, and they did receive the additional payments.

82.     Defendants deny overtime compensation on the additional payment portion of the hourly wages of the FLSA Collective Members.

83.     Defendants also fail to create, keep, and preserve accurate records with respect to work performed by Plaintiff and the FLSA Collective sufficient to determine their wages, hours, and other conditions of employment in violation of the FLSA, 29 U.S.C.A. § 211(c); 29 C.F.R. §§ 516.5(a), 516.6(a)(1), 516.2(c).

84.     Defendants' actions violated and continue to violate the FLSA and its implementing regulations.

85.     In violating the FLSA, Defendants acted willfully and with reckless disregard of clearly applicable FLSA provisions.

86.     Pursuant to 29 U.S.C. § 216(b), employers such as Defendants, who intentionally fail to pay employee wages in conformance with the FLSA shall be liable to the employee for unpaid wages, liquidated damages, court costs and attorneys' fees incurred in recovering the unpaid wages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff seeks the following relief on behalf of herself and all others similarly situated:

a.     An order permitting this litigation to proceed as an FLSA collective action pursuant to 29 U.S.C. § 216(b);

b.     Prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all potential FLSA Collective members;

c.     Backpay damages (including unpaid overtime compensation, unpaid spread of hours payments and unpaid wages) and prejudgment interest to the fullest extent permitted under the law;

d.     Liquidated damages to the fullest extent permitted under the law;

e.     Punitive damages as permitted under the law;

f.     Litigation costs, expenses and attorneys' fees to the fullest extent permitted under the law; and

g.     Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a jury trial on all claims and issues for which Plaintiff and the

Collective are entitled to a Jury.

Dated: May 11, 2026                          Respectfully submitted,

*/s/ Mark D. Feinstein*
Mark Feinstein Esq.
(FL Bar No. 444170)
**FEINSTEIN & SOROTA, P.A.**
600 Corporate Drive, Suite 320
Fort Lauderdale, FL 33334
Tel.: (954) 617-1500
Facsimile: (954) 617-4100
fspa@fspalaw.com
pleadings@fspalaw.com

Alexandra K. Piazza*
**BERGER MONTAGUE PC**
8241 La Mesa Blvd., Suite A
La Mesa, CA 91942
Tel.: (619) 489-0300
Facsimile: (215) 875-4620
apiazza@bergermontague.com

Camille Fundora Rodriguez*
Olivia Lanctot*
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel.: (215) 875-3000
Facsimile: (215) 875-4620
crodriguez@bergermontague.com
olanctot@bergermontague.com

*Pro hac vice forthcoming*

*Counsel for Plaintiff and the
Proposed FLSA Collective*

19